UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NUMBER 24-004 |
| FINNEY RILEY<br>a/k/a "FINNIE RILEY"<br>a/k/a "FINNE RILEY"<br>a/k/a "FENNIE RILEY" | * | SECTION "L" |

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

**NOW INTO COURT,** comes defendant Finney Riley, who respectfully moves this Honorable Court to suppress all evidence obtained by law enforcement during and as a result of the search of his residence on May 2, 2022. As explained herein, the search of Mr. Riley's residence violated the Fourth Amendment, mandating suppression of all evidence derived from deputies' unlawful search.

BACKGROUND

On May 2, 2022, at approximately 2:51 pm, deputies with the St. Tammany Parish Sheriff's Office (STPSO) responded to reports of a shooting incident at the intersection of Pansy Street and Progress Street in Covington, Louisiana. *See* Exhibit A (incident report). Deputies discovered the body of a male (later identified as Kawon Moore) inside of a parked Nissan Maxima with spent bullet casings found around the vehicle. *Id.* Mr. Moore had been shot and was deceased. *Id.*

1

Later that evening, Det. Angelica Lopez applied for and received a search warrant for the residence of Finney Riley. *See* Exhibit B (search warrant affidavit); Exhibit C (search warrant). Det. Lopez's affidavit asserted that "Photographs"; "Any electronic equipment with ability to store/record to include DVR, Cellular phones, and alternative home surveillance equipment."; "Weapon(s)"; "Spent/live ammunition'" and "Anything else deemed of evidentiary value" constituting evidence of second-degree murder were located in Mr. Riley's mobile home. Exhibit B. Except for the request to search home surveillance equipment, however, the affidavit was wholly devoid of facts that tied Mr. Riley or his residence to the homicide or otherwise provided probable cause to believe that photographs, weapons, ammunition, or other items of evidentiary value related to the homicide were located in the home. *Id.*

The affidavit stated that STPSO was investigating the homicide of Mr. Moore in his Nissan in the roadway in front of 72501 Pansy Street and "observed a single wide mobile home with gray in color vinyl siding located at 72506 Pansy Street"—Mr. Riley's home, which is across the street and slightly down the road from 72501 Pansy. *Id.* The affidavit then "noted the residence was equipped with an externally mounted surveillance camera which faces in the direction of Pansy Street" and stated that "[f]or reference the aforementioned residence faces the street directly where the Nissan is located." *Id.* These facts, at most, provided probable cause to believe that Mr. Riley's

2

surveillance camera may have captured events relevant to the homicide, justifying a search limited to his surveillance footage. But Det. Lopez did not seek a warrant limited to the surveillance footage; she sought a warrant for Mr. Riley's entire residence.

The affidavit then recounted, in full, detectives' interaction with Mr. Riley that day:

> [D]etectives made several attempts to make contact with a resident at the residence located at 72506 Pansy Street multiple times; however, no one answered the door. Detectives remained outside the residence and two individuals showed up to meet with the resident Finn Riley. Riley then exited the home advising he had no idea a shooting took place outside his home and that detectives have been making effort to reach him.
>
> Based on the aforementioned information, Detective Lopez prays for the issuance of a search warrant of the residence located at 72506 Pansy Street, Covington, Louisiana for the furtherance of this investigation.

*Id.* In other words, Det. Lopez sought a search warrant for Mr. Riley's home based on nothing more than the fact that he lived near the homicide, had not answered the door when detective knocked that afternoon, and then exited his house that evening and told deputies that "he had no idea a shooting took place" or that detectives wanted to talk to him.

All the events recounted in Det. Lopez's affidavit took place on the same afternoon/evening of May 2, 2022. As captured on body camera footage, at some point around 8:37 pm that evening, Mr. Riley exited his house to greet visitors

3

and was then approached by STPSO deputies who were still in the street investigating the homicide. *See* Exhibit D (body camera footage). Deputies told Mr. Riley that he was not a suspect but that they wanted to take him to the police station for an interview. *Id.* at 1:30-4:00. Mr. Riley agreed to talk to detectives at the scene and told them that he had been asleep in his house and did not know anything about the homicide. *Id.* He also told detectives that he had been drinking, did not want to go with them to the police station for an interview, but would go to the station if his friend could give him a ride. *Id.* Detectives insisted that he needed to go with them to the police station, even though they explicitly said that he was not under arrest. *Id.*

Detective also prevented Mr. Riley from re-entering his house. When Mr. Riley asked why he could not go back into his own house if he was not under arrest, he was told that he was being "detained" and could not enter his house or leave on his own because STPSO had a search warrant for his house and were about to execute it. *Id.* at 4:00-4:30. This last statement was not wholly true, however, because the search warrant had not been approved yet. *See* Exhibit C (warrant approved at 8:51 pm).[1] Mr. Riley eventually was taken by deputies to the station for a witness interview, even though he said that he did not know anything about the homicide. Exhibit D at 10:00-11:15.

---

[1] *See also* Exhibit D at 10:45 (Det. Lopez quietly asking a deputy at approximately 8:47 pm "hey could you stand by so we could use your body cam *whenever we get the search warrant*?") (emphasis added).

4

STPSO's subsequent search of Mr. Riley's residence resulted in the seizure of various items, including cell phones, firearms, and ammunition. Exhibit E (search warrant return). Because of a prior felony conviction, Mr. Riley was arrested for possession of a firearm by a felon in violation of state law. Exhibit F (arrest warrant). Mr. Riley's case was later federally adopted, and, on January 11, 2024, he was indicted on a single count of violating 18 U.S.C. § 922(g). *See* R. Doc. 1.

## LEGAL FRAMEWORK

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Thus, "[a] valid search warrant may be issued only upon a finding of probable cause." *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). "The information necessary to show probable cause must be contained within a written affidavit given under oath," and "[t]he affidavits must supply the magistrate with sufficient information to determine that probable cause exists." *Id.* at 1302-03. When law enforcement seizes evidence pursuant to a search warrant, the defendant bears the burden of proving, by a preponderance

of the evidence, that the evidence was seized in violation of his constitutional rights and therefore ought to be suppressed. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

Evidence may still be admissible, "even though the affidavit on which the warrant was based was insufficient to establish probable cause," but only if the government establishes that it was "obtained by officers in objectively reasonable good-faith reliance upon a search warrant." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). This is the so-called "good faith exception" or "*Leon* exception." But the *Leon* exception is limited. Importantly, it "does not apply where the warrant is based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923). Such affidavits are often referred to in caselaw as "bare bones" affidavits. *United States v. Pofahl*, 990 F.2d 1456, 1474 (5th Cir. 1993). "Bare bones" affidavits tend to contain "wholly conclusory statements" and "lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321. If a search warrant is not supported by probable cause and the *Leon* exception does not apply, the evidence obtained as a result of the search must be suppressed. *Id.* at 320.

6

ARGUMENT

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court,* 407 U.S. 297, 313 (1972). And the Supreme Court has "long adhered to the view that the warrant procedure minimizes the danger of needless intrusions of that sort." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also id.* at 583 ("It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment"). Thus, pursuant to the Fourth Amendment, government agents typically need a warrant supported by probable cause to enter a home. *See id.* at 590 ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.");[2] *see also Silverman v. United States*, 365 U.S. 505, 511 (1961) ("The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

The Fifth Circuit has made clear that in these circumstances "[p]robable cause [for a search warrant] exists when under the 'totality of the

---

[2] "Exigent circumstances," which are not present in this case, can sometimes justify the warrantless entry of a home for limited purposes. *See United States v. Hicks*, 389 F.3d 514, 526-28 (5th Cir. 2004).

7

circumstances . . . there is a fair probability that contraband or evidence of a crime will be found *in a particular place*.'" *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (emphasis added). "It is not enough for the supporting affidavit of a search warrant to state that a defendant is under indictment and that there was a warrant for his arrest"—and, by extension, certainly not enough that a person merely resides near a crime scene, did not immediately answer the door, and told officers that he had no knowledge of a crime. *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994) (citation omitted). Rather, "facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (collecting cases). When an affidavit fails to establish a nexus to the particular place to be searched, it fails to establish probable cause for a search of that place. *See, e.g. United States v. Brown*, 567 F. App'x 272, 282-84 (5th Cir. 2014); *United States v. Gramlich*, 551 F.2d 1359, 1362 (5th Cir. 1977); *United States v. Flanagan*, 423 F.2d 745, 746-47 (5th Cir. 1970).

Additionally—and independently—there must be probable cause "that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006). "The officer's supporting affidavit must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being

8

investigated." *Id.* (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 302, 307 (1967)) ("There must, of course, be a nexus . . . between the item to be seized and criminal behavior."). Without this additional nexus, there is no probable cause for a search. *See id.* at 1109-12.

Det. Lopez's search warrant affidavit was deficient and failed to establish probable cause for two independent reasons, each of which mandates suppression. First, with the exception of the surveillance video footage, the affidavit did not establish a nexus between Mr. Riley's residence and the evidence sought. *See Freeman*, 685 F.2d at 949. Second, the affidavit did not establish that the items sought were instrumentalities or evidence of a crime and that there was a nexus between the items and the homicide being investigated. *See Kohler*, 470 F.3d at 1109; *Hayden*, 387 U.S. at 307.

Det. Lopez's affidavit stated that STPSO was investigating a homicide of a man in a parked Nissan "in front of a residence located at 72501 Pansy Street," which is not Mr. Riley's residence. As to Mr. Riley's residence, which the affidavit correctly noted is located at 72506 Pansy Street, Det. Lopez stated only that it "was equipped with an externally mounted surveillance camera which faces in the direction of Pansy Street" and that "[f]or reference the aforementioned residence faces the street directly where the Nissan is located." Thus, the facts in the affidavit, at most, established probable cause that Mr. Riley's home surveillance system may have captured video relevant to the

9

homicide and justified, at most, a warrant for officers to retrieve and view his surveillance footage.

But Det. Lopez did not simply seek a warrant to search surveillance footage. Instead, she sought a warrant to search the interior of Mr. Riley's home for "Photographs"; "Any electronic equipment with ability to store/record to include DVR, Cellular phones, and alternative home surveillance equipment"; "Weapon(s)"; "Spent/live ammunition" and "Anything else deemed of evidentiary value" related to the homicide investigation. This broad request wholly lacked probable cause.

No facts in Det. Lopez's affidavit suggested that Mr. Riley was a suspect or person of interest in the homicide; no facts suggested that his home contained, *inter alia*, weapons and ammunition at all; and, most importantly, no facts suggested that any weapons, ammunition, or other evidence related to the homicide were located in his home. *See Garcia*, 27 F.3d at 1014 (explaining that an indictment or arrest warrant is not enough for a search warrant); *Freeman*, 685 F.2d at 949 (explaining that probable cause requires "a nexus between the house to be searched and the evidence sought"); *Kohler*, 470 F.3d at 1109 (explaining that probable cause requires "some nexus between the items to be seized and the criminal activity being investigated").

Instead, the affidavit merely recounted detectives' initial difficulties in speaking with Mr. Riley that afternoon: "[D]etectives made several attempts


to make contact with a resident at the residence located at 72506 Pansy Street multiple times; however, no one answered the door." And then it recounted detectives' brief interaction with Mr. Riley that same evening: "Detectives remained outside the residence and two individuals showed up to meet with the resident Finn Riley. Riley then exited the home advising he had no idea a shooting took place outside his home and that detectives have been making effort to reach him."

If these scant facts were enough to justify a search of Mr. Riley's home, then detectives would have been equally justified in searching most, if not all, of the homes on Pansy Street (and perhaps even the adjoining streets) to rummage for evidence of a crime. But this plainly would violate the Fourth Amendment, which was adopted precisely to prevent the "chief evil" of general searches of homes without particularized probable cause. *See U.S. Dist. Court*, 407 U.S. at 313 (1972); *Payton*, 445 U.S. at 583, 586. The search warrant for Mr. Riley's residence was invalid due to lack of probable cause, and the search of his home violated the Fourth Amendment.

Further, because the government cannot meet the requirements of the *Leon* exception, the fruits of the unconstitutional search must be suppressed. As explained above, Det. Lopez's affidavit lacked indicia of probable cause for a search of the interior of Mr. Riley's home for evidence of the homicide. In other words, the affidavit's assertion that Det. Lopez believed that evidence of

the homicide was located in Mr. Riley's residence was a wholly conclusory statement, unsupported by facts from which the magistrate could independently assess probable cause. *See Satterwhite*, 980 F.2d at 321. Thus, reliance on the warrant was unreasonable, and the *Leon* exception does not apply. *See id.* at 321.

Accordingly, the motion to suppress the items seized as a result of the search of Mr. Riley's house—including cell phones, firearms, and ammunition—must be granted. *See, e.g. Brown*, 567 F. App'x at 282-83 (affidavit's conclusory statement that officer believed narcotics were located in defendant's home, absent facts linking the drug investigation to the home, could not support *Leon* exception).

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, defendant Finney Riley respectfully requests that this Court grant his motion and suppress all evidence discovered as a result of the unconstitutional search of his home. Alternatively, Mr. Riley requests that the Court hold an evidentiary hearing on this motion.

Respectfully submitted, this 23rd day of May, 2024.

CLAUDE J. KELLY
Federal Public Defender


/s/ Valerie Welz Jusselin
VALERIE WELZ JUSSELIN
First Assistant Federal Public Defender
Hale Boggs Federal Building
500 Poydras Street, Suite 318
New Orleans, Louisiana 70130
Telephone: (504) 589-7930
Email: valerie_jusselin@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Mark A. Miller, Assistant United States Attorney, 650 Poydras Street, New Orleans, Louisiana 70130.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

/s/ Valerie Welz Jusselin
VALERIE WELZ JUSSELIN
First Assistant Federal Public Defender