UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| VERSUS | * | NO. 24-4 |
| FINNEY RILEY | * | SECTION L |

### ORDER & REASONS

Pending before the Court is Defendant Finney Riley's Motion to Suppress, R. Doc. 22. The Government opposes the Motion, R. Doc. 29, and Mr. Riley replied. R. Doc. 30. Considering the record, the parties' briefing, and the applicable law, the Court now rules as follows.

I.   **BACKGROUND**:

Mr. Riley has been indicted on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  R. Doc. 1. On May 2, 2022, deputies with the St. Tammany Parish Sheriff's Office responded to reports of a shooting on Pansy Street in Covington, Louisiana. They arrived to discover the body of a man, later identified as Kawon Moore, inside a parked Nissan car. Mr. Moore had been shot and was deceased. The police observed a single wide mobile home located across the street from the scene. This residence was equipped with an externally mounted surveillance camera which faced in the direction of the scene.

Later that evening, Detective Angelica Lopez applied for a search warrant for this residence, which was owned and occupied by Finney Riley. The affidavit sought "(1) photographs, (2) any electronic equipment with the ability to store/record to include DVR, cellular phones, and alternative home surveillance equipment, (3) weapon(s), (4) spent/live ammunition, and (5) anything else deemed of evidentiary value." R. Doc. 22-2 at 1.

In support of the warrant, Detective Lopez noted that Mr. Riley's residence "was equipped

with an externally mounted surveillance camera which faces in the direction of Pansy Street . . .

directly where the Nissan is located." *Id.* at 1-2. She also described the following attempts

detectives had made to contact Mr. Riley:

> Throughout the investigation, detectives made several attempts to make contact with a
> resident at the residence located at 72506 Pansy Street multiple times; however, no one
> answered the door. Detectives remained outside the residence and two individuals showed
> up to meet with the resident Finn Riley. Riley then exited the home advising he had no idea
> a shooting took place outside his home and that detectives had been making effort to reach
> him. *Id.*

The warrant was signed, and detectives, including Detective Lopez, searched Mr. Riley's home

where they found cell phones, two firearms, and ammunition.

After the search, the Government did not bring any charges against Mr. Riley in relation to

the shooting of Kawon Moore. However, Mr. Riley was charged with being a felon in possession

of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

## II.   PRESENT MOTION

Mr. Riley seeks to suppress the cell phones, firearms, and ammunition that were found

during the search of his house. R. Doc. 22. He contends that the warrant was not supported by

probable cause for two reasons. R. Doc. 22-1 at 9. First, he contends that, with the exception of

the surveillance camera footage, the affidavit did not establish a nexus between his residence and

the evidence sought. *Id.* Second, he argues that the affidavit failed to establish that the items sought

were instrumentalities or evidence of a crime, that is, that there was a nexus between the items and

the homicide that was being investigated. *Id.*

Mr. Riley agrees that the officers had probable cause to search his home for the surveillance

camera footage. *Id.* at 10. However, he contends that the warrant does not describe any facts

supporting probable cause to search for photographs, recording devices, weapons, live ammunition

or "anything else deemed of evidentiary value." *Id.* The only facts mentioned in the affidavit that

tied him to the investigation were (1) his home was nearby the scene and (2) he did not answer the door when detectives knocked. *Id.*

Further, Mr. Riley contends that the Government cannot meet the requirements of the *Leon* exception, which allows evidence obtained under a warrant unsupported by probable cause to come in where such evidence was obtained in good-faith reliance upon a search warrant. *Id.* at 11. Mr. Riley contends that the exception does not apply where, as here, the warrant requested by the investigating officer who drafted the application is so lacking in indica of probable cause to search for and seize weapons as to render belief in its existence entirely unreasonable. *Id.* at 12.

The Government opposes the motion. R. Doc. 29. It contends that (1) the warrant was supported by probable cause and (2) even if the warrant was not supported by probable cause, suppression is inappropriate under the *Leon* exception because the officers relied on the warrant in good faith. *Id.* at 3. The Government notes that the affidavit sought surveillance camera footage, which was clearly proper given the visible surveillance cameras nearby to a potential murder scene. *Id.* at 6. It further contends that the "photographs," "electronic equipment with the ability to store or record," and "alternative home surveillance equipment" were all related to this reasonable request. *Id.*

As to the affiant's request to search for "weapons" and "live ammunition," the Government largely concedes that that the warrant may have been "overly broad" in its request to search for these items. *Id.* at 7. However, it avers that evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith *Leon* exception applies. *Id.* Furthermore, it contends that officers found the weapons and ammunition in plain view, so the officers would have ultimately seized the items regardless of whether the warrant listed them. *Id.* at 8.

## III.    LEGAL STANDARD

### A.  The Fourth Amendment and Suppression

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The Supreme Court's Fourth Amendment jurisprudence has established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* A party urging such a motion to suppress "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [their] Fourth Amendment rights." *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

### B. The Probable Cause Standard

In general, a warrant to enter someone's home and seize particular items must be supported by probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). To establish probable cause for a warrant, "facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). Additionally, there must be probable cause that the items sought constitute "fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006). The court may review each item or group of items sought under the warrant separately in making probable cause determinations. *See Freeman*, 685 F.2d at 949 (examining separately whether probable cause existed to search for three different groups of items). Accordingly, a warrant may be supported by probable cause as to some items to be seized, but unsupported by probable cause as to others. *See id*.

### C. The *Leon* Exception

While warrants must generally be supported by probable cause, there are some exceptions. Under the *Leon* "good faith" exception, "evidence obtained in objectively reasonable reliance on

a subsequently invalidated search warrant" will not be excluded. *United States v. Leon*, 468 U.S. 897, 922 (1984). One circumstance where reliance on the warrant would not be objectively reasonable is where the affidavit is "so lacking in indica of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. Such "[b]are bones affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

## IV.   DISCUSSION

The Court begins by discussing Mr. Riley's argument that the warrant was not supported by probable cause.

### A.  Probable Cause

Here, both parties agree that the police had probable cause to obtain a warrant to search for surveillance camera footage. R. Doc. 22-1 at 9. However, Mr. Riley contends that officers did not have probable cause to search for all other items sought in the affidavit including photographs, devices with the ability to store or record, weapons, ammunition, and "anything else of evidentiary value." These items are examined in turn.

#### i.  Photographs and Devices Able to Store or Record

As to the "photographs" and "electronic equipment with the ability to store/record to include DVR, cellular phones, and alternative home surveillance equipment," the Court finds that warrant was supported by probable cause.  Detective Lopez explained in the affidavit that detectives had "noted [Mr. Riley's] residence was equipped with an externally mounted surveillance camera which faces . . . the street directly where the Nissan was found." Officers reasonably believed that the camera might have recorded footage of the homicide they were investigating. Thus, the officers had a reasonable belief that the home surveillance equipment

could be crucial "evidence of a crime." *Kohler*, 470 F.3d at 1109. And, there was a clear "nexus" between Mr. Riley's home and the footage sought. *Freeman*, 685 F.2d at 949.

As to "photographs," and other "electronic equipment with the ability to store or record to include . . . cellular phones," these items are reasonably intertwined with the search for surveillance camera footage. Many modern surveillance systems send photographs or stream video footage directly to cell phones. *See McBryde-O'Neal v. Polichetti*, No. 23-CV-10113, 2024 WL 195571, at *1 (S.D.N.Y. Jan. 17, 2024) ("Ring devices are smart-phone integrated camera[s], generally affixed or wired near the front door of apartments or homes."). Accordingly, Mr. Riley's motion to suppress is denied as to the cell phones seized from his home.

### ii. Weapons and Live Ammunition

Next, Mr. Riley contends that there was absolutely no probable cause to search his home for "weapons" or "live ammunition." He notes that the only connection the affiant draws in the warrant application between himself and the homicide the officers were investigating is (1) he lived nearby the scene of a shooting and (2) he did not answer the door when the police knocked. The Court agrees.

For a warrant to be valid, there must be probable cause that the items sought constitute "fruits, instrumentalities, or evidence of a crime" and "facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought." *Kohler*, 470 F.3d at 1109; *Freeman*, 685 F.2d at 949. In general, a vague locational connection to the scene of the crime and refusal to cooperate with police requests is not sufficient to establish probable cause to search for evidence of a violent crime. For example, in *Kohler v. Englade*, the Fifth Circuit found that a warrant was not supported by probable cause in an investigation of a serial murder case. 470 F.3d at 1111. There, two detectives swore out an affidavit to seize the defendant's DNA. *Id.* at 1110. In support of their affidavit, the officers noted that two anonymous tips had come in

mentioning the defendant. *Id.* Further, he had been employed at a business which had a location on the same street as one of the crime scenes, and he had refused officers' requests to cooperate with their investigation by willingly providing his DNA. *Id.* Overall, the court found that these facts "did not establish a fair probability that [the defendant] was the serial killer." *Id.* at 1111.

In the present case, there is even less indicia of probable cause than in *Kohler*. *Id.* Unlike in *Kohler*, where anonymous tips cast some suspicion on the defendant, here no facts or suspicions connected Mr. Riley to the homicide. And whereas the defendant in *Kohler* affirmatively refused to help the police operation by denying their request for his DNA, the only suggestion of Mr. Riley's non-cooperation is that he did not answer his door. Simply put, no facts recounted in the affidavit support the conclusion that any weapons or live ammunition located in Mr. Riley's home would constitute "fruits, instrumentalities, or evidence of a crime." *Id.*

Furthermore, the *Leon* exception does not apply in this case because, as to the search for weapons and ammunition, the affidavit was a "[b]are bones affidavit . . . which lack[ed] the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321. Moreover, the *Leon* exception is harder to establish when the same officer who swore out the affidavit executes the warrant. *See United States v. Barrington*, 806 F.2d 529, 532 (5th Cir. 1986). The reasoning for the *Leon* exception is that an officer should not be expected to question a magistrate judge's prior determination of probable cause. *Leon*, 468 U.S. at 921. However, where the officer herself prepared the bare bones affidavit, and has first-hand knowledge of the defects of the offered facts, the justification for the exception holds less force. *See Barrington*, 806 F.2d at 532.  ("In the instant case, [the officer] obtained the warrant based on his own bare bones affidavit and then conducted the search himself. If one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search, he cannot himself conduct the search based on his own bare bones affidavit.").

Here, Detective Lopez both prepared the warrant and searched Mr. Riley's home. *See* R. Doc. 22-1 (affidavit); R. Doc. 22-3 (bodycam footage showing Detective Lopez executing the warrant). Because Detective Lopez wrote the affidavit, which included no facts indicating that there may be a murder weapon in Mr. Riley's home, she could not then "conduct the search based on h[er] own bare bones affidavit." *Id.* Overall, the Court finds that, as to the search for weapons and ammunition, the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[1] *Leon*, 468 U.S. 923.

### B.  Plain View

The Government next contends that, even if the warrant had not included weapons and live ammunition, detectives would have inevitably discovered the weapons in their search for cameras and cell phones, as they were in plain view next to Mr. Riley's bed. Thus, it contends that the evidence should not be suppressed. The Court disagrees.

The plain view doctrine applies in a "situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Horton v. California*, 496 U.S. 128, 135 (1990). There are four requirements for the plain view doctrine to permit warrantless seizure: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (quoting *id.* at 136-37). The burden is on the government to establish that the plain view exception applies. *See United*

---

[1] The affiant also asks to search for "anything else of evidentiary value." Because Mr. Riley does not seek to suppress any items seized pursuant to this provision of the warrant, the Court need not discuss its validity at length. However, the Court notes that it seems facially invalid, as it does not "particularly describe . . . the things to be seized." *United States v. Quinlan*, 149 F.3d 1179, 1179 (5th Cir. 1998). Such a facially overbroad provision further undermines the Government's contention that the *Leon* exception applies, as a reasonable officer would likely not have believed such a broad provision was permissible.

*States v. Boutte*, No. 08 CR 0009, 2008 WL 4690509, at *4 (W.D. La. Oct. 3, 2008), subsequently aff'd, 354 F. App'x 932 (5th Cir. 2009) (discussing whether the government "had failed in its burden of proof to show the 'plain view' exception was applicable").

As to the third factor, that the incriminating character of the evidence be immediately apparent, officers may seize a weapon without a warrant where they are aware that the resident has a prior felony conviction when they execute the search warrant. *See United States v. Waldrop*, 404 F.3d 365, 370 (5th Cir. 2005) (holding that seizure of firearms was proper when at least one officer on the scene knew that the defendant had a prior felony conviction that would make his possession of firearms illegal). However, officers may not seize a firearm pursuant to the plain view exception when they are unaware that the defendant has a prior felony, as the unlawful nature of the firearm is not immediately apparent. *See Rodriguez*, 601 F.3d at 407 (noting that full seizure of a firearm would not have been proper because "officers did not have probable cause to believe that [the defendant] was a felon"). Rather, officers may only seize the firearm "on a temporary basis to secure it" while they assess the situation for threats. *Id.* at 408.

Here, the officers who executed the warrant did not discover that Mr. Riley had a prior felony until after they finished their search, drove back to the police station with the seized firearms, and asked another officer to run a report of Mr. Riley's name through a registry of the National Crime Information Center. R. Doc. 22-2; R. Doc. 33 (suppression hearing).  This lengthy timeframe, and the removal of the firearms from the home, goes beyond seizure "on a temporary basis to secure" the firearms while officers controlled the scene. *Rodriguez*, 601 F.3d at 407. Because the Government has not shown that the incriminating character of the firearms was immediately apparent, the Government has not met its burden of proving that the plain view exception applies. *See Boutte*, 2008 WL 4690509, at *4.

Finally, at oral argument the Government further suggested that even if the seizure was not

supported by the plain view exception, the intrusion on Mr. Riley's Fourth Amendment rights was "de minimis" because officers could have simply gotten another warrant after they realized Mr. Riley was a felon. R. Doc. 33. The Court recognizes that at least one other Circuit has applied a "de minimis" exception in a similar situation. *See United States v. Gordon*, 741 F.3d 64, 73 (10th Cir. 2014) (holding that the infringement on a defendant's Fourth Amendment right was "de minimis" where officers seized a firearm pursuant to the plain view exception and did not discover that he was a felon until they were driving away from the house). However, the Court has located no Fifth Circuit cases approving or applying such an exception in this context. Accordingly, the Court does not find that the infringement on Mr. Riley's Fourth Amendment rights was "de minimis." *See Riley v. California*, 573 U.S. 373, 401, (2014) ("Our cases have historically recognized that the warrant requirement is 'an important working part of our machinery of government,' not merely 'an inconvenience to be somehow weighed against the claims of police efficiency.'") (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971)). Overall, the Court finds that Mr. Riley's motion to suppress the weapons and ammunition found in his home should be granted.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Mr. Riley's motion to suppress is **DENIED** in part and **GRANTED** in part. The motion is **DENIED** as to the suppression of the cell phones. The motion is **GRANTED** as to the suppression of firearms and ammunition.


New Orleans, Louisiana, this 1st day of July, 2024.

10

UNITED STATES DISTRICT JUDGE